IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MILO ENTERPRISES, INC, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | No. 18 C 6315 |
| v. | ) | |
| | ) | Judge John Z. Lee |
| BIRD-X, INC. | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Milo Enterprises, Inc. ("Milo") and Defendant Bird-X, Inc. ("Bird-X") are both corporations that produce bird repellant products, including balloons intended to scare birds away. Milo markets its own bird repellant balloons under the name VisualScare and describes them as "Scary Eye Balloons." Bird-X has trademarked its line of bird repellant balloons under the name "SCARE-EYE."

Unable to resolve their differences, Milo seeks a declaratory judgment that it is not infringing upon Bird-X's trademark, copyright, and trade dress and that Bird-X's "SCARE-EYE" trademark is unenforceable. Milo also filed claims for tortious interference with business relations; unfair competition under the Lanham Act, 15 U.S.C. § 1125; violation of 17 U.S.C. § 512(f); and defamation. Bird-X has responded with counterclaims, alleging false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a), as well as federal and common law trademark infringement. Each side has moved for summary judgment on certain claims. For the following reasons, Milo's motion is denied, and Bird-X's motion is granted in part and denied in part.

I.     **Local Rule 56.1**

Before considering the facts underlying these motions, the Court must consider which facts have been properly presented for the purpose of summary judgment. Motions for summary judgment in the Northern District of Illinois are governed by Local Rule 56.1. "The obligation set forth in Local Rule 56.1 'is not a mere formality.' Rather, '[i]t follows from the obligation imposed by Fed. R. Civ. P. 56(e) on the party opposing summary judgment to identify specific facts that establish a genuine issue for trial.'" *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted) (quoting *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 924 (7th Cir. 1994)). The Seventh Circuit has "routinely held that a district court may strictly enforce compliance with its local rules regarding summary judgment motions." *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 537 (7th Cir. 2011) (quotation omitted). In this case, because the parties have filed cross-motions, each must comply with Local Rule 56.1(a), which governs filings by the moving party, and 56.1(b), which governs filings by the opposing party.

A.     **Milo's Motion for Partial Summary Judgment**

"To be considered on summary judgment, evidence must be admissible at trial, though 'the form produced at summary judgment need not be admissible.'" *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016) (citations omitted). For example, the Court cannot consider inadmissible hearsay. *Id*. What is more, a party filing a motion for summary judgment must include a "statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party

2

to a judgment as a matter of law," where each paragraph contains "specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." LR 56.1(a)(3)(B). Failure to properly submit such a statement "constitutes grounds for denial of the motion." *Id.*

Here, Milo's Statement of Material Fact does not comply with Local Rule 56.1(a). Indeed, Milo cites only two documents throughout its Statement of Fact: A Declaration by Benjamin Hung (Milo's own attorney), and a Declaration by Michael Liu, Milo's Chief Executive Officer (CEO). *See generally* Pl.'s Statement of Material Fact ("PSOF"), ECF No. 120; Pl.'s Mot. Partial Summ. J., Ex 2, Decl. of Benjamin Hung ("Hung Decl."), ECF No. 119-2; Pl.'s Mot. Partial Summ. J., Ex 2, Decl. of Michael Liu ("Liu Decl."), ECF No. 119-3. But as Bird-X points out, these affidavits are replete with hearsay, improper legal conclusions about the use of copyrighted material and trademarks, and speculation beyond the witnesses' personal knowledge—meaning they would not be admissible at trial. *See* Def.'s LR 56.1 Statement Material Fact and Resp. PSOF ("DSOF") at 14–21, ECF No. 126. And Milo, in its own reply brief and response to Bird-Xs' statement of facts, failed to respond to that argument. *See generally* Pl.'s Resp. DSOF, ECF No. 132. Such "[f]ailure to respond to an argument . . . results in waiver."[1] *Bonte v. U.S. Bank, N.A.,*

---

[1]     It bears noting that even if Milo had responded to Bird-X's arguments, the Court's ruling would be the same. Bird-X correctly noted that Milo's affidavits are riddled with evidentiary deficiencies. Hung's affidavit, for example, purports to authenticate multiple documents without any foundation as to how they were found or what search criteria were used to find them. And much of his affidavit is irrelevant—as explained below, there is no justiciable copyright issue in this case, but Hung attempts to offer an exhibit relating to a search of the copyright database. *See* Hung Decl. at 6. And at any rate, the fact that only Milo's attorney attests to the authenticity of these documents raises issues under the

624 F.3d 461, 466 (7th Cir. 2010). Accordingly, all paragraphs relying on affidavits from Hung or Liu are stricken as noncompliant. *See, e.g., Bielawski v. Midland Funding LLC*, No. 18 C 2513, 2019 WL 4278042, at *3 (N.D. Ill. Sept. 10, 2019) (Lee, J.) (striking a portion of movant's Local Rule 56.1 Statement of Material Fact for lack of support with admissible evidence). The remaining paragraphs in Milo's Statement of Material Fact cite no support at all.

Thus, Milo's motion for summary judgment entirely fails to comply with the requirements of Local Rule 56.1(a)(3)(B). Accordingly, Milo's motion for partial summary judgment is denied.

## B. Milo's Response to Bird-X's Motion for Summary Judgment

Turning to Milo's response to Bird-X's motion, Local Rule 56.1(b)(3)(B) requires the nonmovant to file a "concise response to the movant's statement that shall contain . . . a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *See* LR 56.1(b)(3)(B). Local

---

"advocate-witness rule," which "bars a lawyer from acting as both an advocate and a witness in the same proceeding except under special circumstances." *United States v. Jones*, 600 F.3d 847, 861–62 (7th Cir. 2010). As for Liu's declaration, it contains almost exclusively legal conclusions about whether Milo has infringed on third parties' intellectual property rights and whether the company has suffered injury as a result of this lawsuit. *See* Liu Decl. ¶¶ 1–12. But "[o]pinions that amount to legal conclusions do not assist the trier of fact, and expert testimony that is 'largely on purely legal matters and made up of solely legal conclusions' is not admissible." *Client Funding Sols. Corp. v. Crim*, 943 F. Supp. 2d 849, 863 (N.D. Ill. 2013) (quoting *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003)). While the Court need not reach these issues in light of Milo's waiver, the Court is confident that any response Milo would have given, even if it proved *some* evidence admissible, would not be enough to cure the gross insufficiencies in Milo's Local Rule 56.1 Statement of Facts, and the motion for partial summary judgment would still be dismissed as noncompliant.

4

Rule 56.1(b)(3)(C) also "requires specifically that a litigant seeking to oppose a motion for summary judgment file a response that contains a separate 'statement . . . of any additional facts that require the denial of summary judgment.'" *Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 809 (7th Cir. 2005) (quoting LR 56.1).

The failure of a nonmoving party to abide by the rule's requirements carries significant consequences. "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." LR 56.1(b)(3); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). "This rule may be the most important litigation rule outside statutes of limitation because the consequences of failing to satisfy its requirements are so dire." *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000).

Here, too, Milo failed to comply with these procedural requirements. Although Milo filed a response to Bird-X's statement of facts, *see* Pl.'s Resp. DSOF, that response contains virtually no "specific references to the affidavits, parts of the record, and other supporting materials relied upon." LR 56.1(b)(3)(B). Rather, nearly all of Milo's denials state only: "Milo, based on Bird-X's reckless and illegal history, does not take at face value anything from Bird-X, or Joe Seid [Bird-X's sales director] including statements made in pleadings before this Court. Milo lacks information otherwise to form a belief." *See, e.g.*, Pl.'s Resp. DSOF at 3. This response, devoid of citations to the record, is insufficient to constitute a denial under Local Rule 56.1.

Other of Milo's responses to Bird-X's Statement of Facts rely on the same inadmissible affidavits as Milo's own statement of facts and similarly fail to comply

5

with Local Rule 56.1. *See* Pl.'s Resp. DSOF at 7 (citing Hung Decl.). Accordingly, all statements by Bird-X to which Milo responded in the manner discussed above are deemed admitted as "[un]controverted by the statement of the opposing party." LR 56.1(b)(3). A handful of Milo's responses do deny Bird-X's statements on the grounds that the statements find no support in the record. *See*, *e.g.*, Pl.'s Resp. DSOF at 7–9. The Court will review the underlying record for these paragraphs, noting disputes as necessary.

## II.  **Background**[2]

Milo and Bird-X are corporations that sell pest repellant products. DSOF ¶¶ 1–2. Milo sells under a variety of wholesaler names, including the name "Aspectek." *Id.* ¶ 1. The company's founder, Michael Liu, is its Director and President, and lives in Canada. *Id.* ¶ 18. He previously owned and operated Longwell Electronics, a Taiwan-based company that manufactured certain Bird-X products until 2015. *Id.* ¶ 20. His son, Anthony Liu, is Milo's Chief Executive Officer. *Id.* ¶ 19.

As relevant here, both Milo and Bird-X sell products marked with renderings of predator eyes which, when inflated and hung, are intended to scare birds away. *Id.* ¶¶ 9, 24–30. Bird-X has a trademark for its line of frightening visual bird repellants, which are marked as "SCARE-EYE" products. *Id.* ¶ 7. This trademark is the impetus for much of the instant litigation.

---

[2]  The following facts are undisputed or deemed admitted, unless otherwise noted.

Bird-X has been selling bird repellant products under the SCARE-EYE mark since at least 1987 and sells these products online with both Amazon and Home Depot. *Id.* ¶¶ 9–10. Milo also sells its bird repellant balloons online, including through Amazon's and Home Depot's websites. *Id.* ¶¶ 23, 31.

Since at least 2015, Milo has sold a line of balloons under the brand name "VisualScare." *Id.* ¶¶ 24–25; *see also* Seid Decl., Ex E, 9/23/15 Bayona Email, ECF No. 126-1 (acknowledgment of VisualScare line by Milo employee). The product description for one balloon in the VisualScare line includes the language "Visualscare Bird Scary Eye Balloons." *See* MILO 000022 Amazon Listing at 3, ECF No. 126-9.

In April 2015, an employee of Bird-X, Sales Director Joe Seid, submitted a complaint to Amazon about Milo's use of the term "Scary Eye" in its Amazon sales listing, believing that it was an infringement of Milo's "SCARE-EYE" trademark. DSOF ¶ 42. His complaint led Amazon to remove the images from Milo's Scary Eye Balloon listing. *Id.* ¶¶ 43–44.

In 2017, Seid again noticed Milo's use of "Scary Eye" in online sales listings for Milo's bird repellant balloons, as well as the use of the terms "Scare Eye" in their product descriptions. *Id.* ¶¶ 46–47. Seid responded by submitting three more complaints to Amazon—two in 2017 and another in 2018—stating that Milo's Amazon listings infringed Bird-X's intellectual property rights.[3] *Id.* At least one of

---

[3] While the majority of Seid's emails reference the "SCARE-EYE" trademark, his March 2018 complaint to Amazon claimed that Milo infringed on Bird-X's "copyright Scare Eye." DSOF ¶ 50. It is undisputed that this was a mistake stemming from Seid's lack of understanding of the difference between copyright and trademark. *Id.* ¶ 51.

7

Milo's listings was removed from Amazon.com in response to Seid's complaints. *Id.* ¶ 55. This led to communication between Seid and an Aspectek employee, regarding the alleged infringement, in which Seid stated that "[t]he Chinese government is looking for Anthony and Michael Liu for tax evasion, I will tell them their location in Canada." DSOF ¶ 70.

In addition to Amazon, Seid also reached out to Home Depot to complain that Milo's online VisualScare balloon sale listings with Home Depot infringed Bird-X's trademark rights. *Id.* ¶ 65. In one such email to Home Depot representatives, Seid stated:

> A Chinese Company called Aspectek has copied Bird-X products (many) and are also using trademarked names.
>
> We know they are Chinese (based in Canada now) because they used to run one of our factories in China before disappearing to avoid Chinese government prosecution for failing to pay taxes.
>
> . . .
>
> They have literally just copied our items and now offer them on HomeDepot.com. . . . BELOW are 6 products that infringe on Bird-X products and are direct knockoffs. [4]

Despite these emails, Home Depot did not suspend Milo's listings or stop selling the VisualScare balloons on its website. *Id.* ¶ 66.

After Seid's communications with Amazon and Home Depot, Milo filed this action, seeking a declaratory judgment that they are not infringing Bird-X's

---

[4] To back up these statements, Bird-X has offered documents from the Taiwan Taipei District Court stating that Michael Liu, under the name Liu Hongchuan, was "publicly prosecuted . . . for fraud" in 2007. DSOF ¶ 67; DSOF, Ex 13, Taiwan Taipei District Court Decision at 1, ECF No. 126-14; DSOF, Ex. 3, M. Liu Deposition at 304:13–24, ECF No. 126-4.

8

trademark, copyright, or trade dress. *See* Second Amended Compl. ("SAC") ¶¶ 54–74, ECF No. 66. Milo also brought claims of tortious business interference; *see id.* ¶¶ 75–83; federal unfair competition under the Lanham Act, 15 U.S.C. § 1125; *see* SAC ¶¶ 84–86; misrepresentation of copyright claims under the Digital Millennium Copyright Act (DMCA), 17 U.S.C. § 512(f); *see* SAC ¶¶ 87–97; and defamation. *Id.* ¶¶ 98–123. Bird-X responded with counterclaims of federal and common law trademark infringement; *see* Bird-X Answer ¶¶ 14–17; ECF No. 36; and false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a). *See* Bird-X Answer ¶¶ 12–13. Having stricken Milo's motion for summary judgment for the reasons described, the Court now considers Bird-X's motion for summary judgment.

## II.   Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The evidence considered for summary judgment "must be admissible if offered at trial, except that affidavits, depositions, and other written forms of testimony can substitute for live testimony." *Malin v. Hospira, Inc.*, 762 F.3d 552, 554–55 (7th Cir. 2014). In reviewing a motion for summary judgment, the Court gives the nonmoving party "the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013).

The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The

9

nonmoving party must then "come forward with specific facts showing that there is a genuine issue for trial." *LaRiviere v. Bd. of Trs. of S. Ill. Univ.*, 926 F.3d 356, 359 (7th Cir. 2019) (quoting *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015)).

To satisfy that ultimate burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead must "establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor," *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012). Where, as here, the parties have filed cross-motions, courts "look to the burden of proof that each party would bear on an issue of trial." *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997).

### III. <u>Analysis</u>

In its motion, Bird-X contends that it is entitled to summary judgment as to all of Milo's claims, as well as its counterclaim of federal trademark infringement.

### A. **Trademark infringement**

The Court first considers whether summary judgment is appropriate on Milo's claim seeking a declaratory judgment of trademark noninfringement. "To prevail on [a claim of trademark infringement], a plaintiff must establish that (1) its mark is protectable and (2) the defendant's use of the mark is likely to cause confusion among consumers." *SportFuel, Inc. v. PepsiCo, Inc.*, 932 F.3d 589, 595 (7th Cir. 2019). But even once a case of infringement is established, "[u]nder 15 U.S.C. § 1115(b)(4), a defendant . . . may invoke the fair use defense by demonstrating that the alleged

infringement 'is a use, otherwise than as a mark . . . which is descriptive of and used fairly and in good faith only to describe the goods or services of such party.'" *Sorensen v. WD-40 Co.*, 792 F.3d 712, 722 (7th Cir. 2015) (quoting § 1115(b)(4)). To prevail on a fair use defense, "a defendant must show that: (1) it did not use the mark as a trademark; (2) the use is descriptive of its goods or services; and (3) it used the mark fairly and in good faith." *Id.* at 722.

Because a genuine dispute of material fact as to the viability of the fair use defense would preclude summary judgment for Bird-X irrespective of whether it can prove the elements of trademark infringement, the Court proceeds directly to the fair use analysis.

## 1.    Use as a trademark

Words or phrases are "used" as trademarks "when [they are] used by a source of a product to identify itself to the public as the source of its product and to create in the public consciousness an awareness of the uniqueness of the source and of its products." *SportFuel*, 932 F.3d at 596 (quoting *Sorensen*, 792 F.3d at 722–723). To decide whether a term is being used as a trademark, the Seventh Circuit assesses multiple factors, including: (1) whether the phrase is used with a company's "house mark"; (2) how prominently it is displayed compared to the house mark; (3) whether the phrase is used on all of its product packaging, or only in certain advertisements; and (4) whether the slogan is "catchy"—that is, whether it is meant to stick in a customer's head and create an association with the source. *Id.* at 598.

These factors do not provide a clear answer when applied to this case. Milo's use of "Scary Eye" alongside its product line name "VisualScare" would weigh in favor of a finding that Milo used it as a trademark.[5] DSOF ¶ 17; *see also* DSOF, MILO000020 at 1, ECF No. 126-9 (reflecting a listing on Amazon's website for VisualScare balloons, and the term "scary eye" in the product title). And unlike in *SportFuel*, Milo used "Scary Eye" in association with a specific product (bird repellant balloons), as opposed to only "on in-store displays and other advertisements." *SportFuel*, 932 F.3d at 598; *see also Sorensen*, 792 F.3d at 723–24 (7th Cir. 2015*)* ("[A] mark that is used on only one product within a larger line can nevertheless be a source indicator, not for the whole line, but for that product in particular.").

But the remaining factors suggest that Milo was not using the phrase as a trademark. Specifically, "scary eye" is not displayed any larger or smaller than "VisualScare" or the other descriptions of the product. *See* DSOF, MILO000020 at 1–2. This could suggest to a reader that it is no more or less important (or more or less associated with the product) than the rest of the product name or description. And nothing about "Scary Eye" stands out as catchy, playful, rhyming, or rhetorical in a way that is intended to create "a memorable slogan that is uniquely associated with [Milo's] product." *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 954 (7th Cir. 1992). Accordingly, a genuine dispute of material fact exists as to whether Milo uses "Scary Eye" as a trademark.

---

[5]     Although Milo's motion for summary judgment was stricken because its statement of facts did not comply with the local rules, the Court notes that Bird-X did not contest that Milo owns a trademark for "VisualScare." *See* Def.'s Resp. PSOF ¶ 11, ECF No. 126.

2. **Descriptive use**

Turning to the second element of the fair use defense, phrases are "descriptive" within the meaning of the fair use exception where the term "names a characteristic of a product or service." *Sorensen*, 792 F.3d at 724. Descriptive use of a term is not a trademark violation; "[t]his rule ensures that competitors can market their products by describing them. . . . [and] reflects that descriptors are a poor means to distinguish among competing products." *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 420 (7th Cir. 2019) (citations omitted). This is a context-dependent analysis. *See Sunmark, Inc. v. Ocean Spray Cranberries, Inc.*, 64 F.3d 1055, 1059 (7th Cir. 1995); *see also Uncommon*, 926 F.3d at 725 (noting that the question of whether "delicious" was a descriptive term in the *shoe* market would be well-suited for the jury, whereas the question of whether the term "corrosion inhibitor" was clearly a descriptive term in the hardware market could fairly be decided on summary judgment).

Some considerations in the descriptiveness analysis include "how, and how often, the relevant market uses the word in question[,] . . . [whether] a mark imparts information directly [or] . . . stands for an idea which requires some operation of the imagination to connect to the goods," and dictionary definitions. *Uncommon*, 926 F.3d at 422–423; *see also Sunmark*, 64 F.3d at 1058 (considering, in the descriptiveness analysis, that "[b]oth sweet and tart are words of description in ordinary English").

Here, too, when the record is viewed in the light most favorable to Milo, it gives no clear answer as to whether the use of "scary eye" is descriptive. As for the use of

13

"scare" and "eyes" in the market, Milo fails to offer any of its own evidence (beyond Liu's impermissible legal conclusions) that these terms are widely used by competitors in the bird repellant market. This would suggest that Milo's use is not descriptive. On the other hand, Bird-X's own exhibit shows a third-party vendor using the term "scary eyes balloons." *See* DSOF, MILO000020 at 2–3 (listing under "Compare with similar items" a product sold by "Tried-and-True Products" with the title "Balloon Bird Repellant . . . Scary Eyes Balloons Keep Birds Away"). From this, a reasonable jury could infer that other market participants use the term "scary eyes," making descriptive use more likely.

An examination of the other factors leads to similarly mixed results. Favoring a finding of descriptive use is that scary and eyes are both being used according to their commonly understood definitions—the balloons are literally using depictions of eyes to scare away birds. Pl.'s Mem. Opp. Def.'s Mot. Summ. J. at 9, ECF No. 131. But the term "scary eyes" certainly does not immediately invoke the category of bird repellant balloons. The inferential step from "scary eyes" on a product to scaring away birds may be enough to prevent the items from being descriptive. *See Life After Hate, Inc. v. Free Radicals Project, Inc.*, 410 F. Supp. 3d 891, 904 (N.D. Ill. 2019) (holding that the organization name "Life After Hate" was not descriptive because "a consumer would need to use their imagination to determine the nature of services provided by an organization called Life After Hate," rather than immediately knowing it was an organization to help people who decided to leave hate groups); *see also Kastanis v. Eggstacy LLC*, 752 F. Supp. 2d 842, 849 (N.D. Ill. 2010) (holding that

14

even though "yolk" was being used in accordance with its dictionary definition—meaning "the yellow center of an egg"—"[t]he word 'yolk' is not a generic term for a restaurant serving breakfast food and egg based dishes"). Accordingly, there is a genuine issue of material fact as to whether the term "scary eye" is used descriptively.

3.    **Good Faith**

Finally, the good faith element of the fair use defense "look[s] to [the alleged infringer's] subjective purpose in using a slogan." *SportFuel*, 932 F.3d at 600. Although it is relevant, "[m]ere knowledge of [a] trademark . . . is insufficient to establish that the [alleged infringer] acted in bad faith and to preclude summary judgment." *Packman v. Chicago Trib. Co.*, 267 F.3d 628, 642 (7th Cir. 2001).

Here, Bird-X's only argument that Milo did not act with good faith is that Milo was aware of Bird-X's trademark on the term "SCARE-EYE" and continued marketing its "scary eye" product anyway. Bird-X also mentions—although unconnected with the good faith analysis—that Michael Liu, Milo's Director and President, used to manufacture Bird-X's products. DSOF ¶¶ 18–20. But *SportFuel* teaches that this is not enough to undisputedly show bad faith.

In *SportFuel*, the alleged infringer had a prior acrimonious business relationship with the trademark holder and used the allegedly infringing phrase even after it knew about the existing trademark. *See SportFuel*, 932 F.3d at 600–601. The court found that these factors were insufficient to create an inference of bad faith. *Id.* at 601; *see also Sands*, 978 F.2d at 962 ("Even the defendant's refusal to cease using the mark upon demand is not necessarily indicative of bad faith. Absent more, courts

should not make an inference of bad faith from evidence of conduct that is compatible with a good faith business judgment.")

Of course, the facts in *SportFuel* do not mirror precisely the facts here—the prior business relationship in *SportFuel* had ended ten years prior to the alleged trademark infringement, *see* 932 F.3d at 594, whereas, here, the alleged infringement began in the same year that the prior business relationship ended. *See* DSOF ¶¶ 20, 22. The shorter time between the end of the prior relationship and the alleged infringement makes an inference of bad faith more plausible. But the record is insufficient to find bad faith as a matter of law. The question of subjective intent in this case is one for the jury.[6]

Because a genuine issue of material fact exists as to fair use, Bird-X's motion for summary judgment in its favor as to its counterclaim of trademark infringement and Milo's trademark noninfringement claim is denied.

## B.   Milo's Claim of Noninfringement of Copyright and Trade Dress

Milo also seeks declaratory judgments of noninfringement of copyright and trade dress. *See* 15 U.S.C. § 1051 *et seq.*; 28 U.S.C. §§ 2201; 2202. In its motion, Bird-X maintains that Milo lacks standing to bring these claims, arguing that Milo's concerns about copyright infringement and infringement of trade dress lack the

---

[6]     It bears noting that the only in-district case Bird-X raises ruled on subjective intent after an evidentiary hearing. *See Mitek Corp. v. Pyramid Sound Corp.*, No. 91 C 20152, 1991 WL 292621, at *3 (N.D. Ill. July 9, 1991). Just as the court in *Mitek* was able to make these assessments after a hearing at which credibility could be assessed, a jury here should be able to review the evidence before making a determination of Milo's subjective intent.

"immediacy and reality to warrant the issuance of a declaratory judgment." *Bell v. Taylor*, 827 F.3d 699, 711 (7th Cir. 2016).

A real and immediate threat of litigation is necessary because, "just like suits for every other type of remedy, declaratory-judgment actions must satisfy Article III's case-or-controversy requirement." *California v. Texas*, 141 S. Ct. 2104, 2115 (2021). And so the claimant's injury must be "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). In the context of copyright, the Seventh Circuit has held that where one party is no longer infringing on another's copyright, and shows no signs of doing so again, a declaratory judgment of infringement is not appropriate. *See Bell*, 827 F.3d at 711.

In response to Bird-X's argument, Milo insists that there is an actual or imminent risk of litigation over copyright infringement based on prior statements by Seid. *See* DSOF ¶ 40; Pl.'s Mem. Opp. Def.'s Mot. Summ. J. at 19, ECF No. 131. Milo insists that because Seid mentioned "copyright" in his emails to Amazon, there is sufficient "immediacy and reality to warrant the issuance of declaratory judgment." *Bell*, 827 F.3d at 711.

But it is undisputed that Seid did not understand the differences between copyright and trademark when corresponding with Amazon. DSOF ¶ 51. Accordingly, any potential for a copyright infringement suit based solely on his statements to Amazon could be no more than an empty threat. And even if it had been a legitimate threat at the time Seid sent those emails—March, 2018, as both parties have agreed, *see* DSOF ¶ 50–51—there is certainly no real or immediate

threat that Bird-X will bring such a suit now. Indeed, both parties have stated as much. *See* Pl.'s Mem. Supp. Mot. Partial Summ. J. and Opp. Def.'s Mot. Summ. J. ("Pl.'s Resp. Mem."), ECF No. 131 at 19; Def.'s Mem. Opp Pl.'s Partial Mot. Summ. J. at 16, ECF No. 122. Where there is no threat of infringement litigation at the time of the declaratory judgment action, then there are no grounds to bring that action. 827 F.3d at 711. Thus, summary judgment for Bird-X is granted as to Milo's noninfringement of copyright claim.

Milo's claim for noninfringement of trade dress has even less basis. Indeed, in responding to Bird-X's contention that it has no trade dress claim and does not intend to assert one, Milo states only that Bird-X "has previously raised complaints based on rights it did not have." Pl.'s Resp. Mem. at 25. But that is exactly the type of "conjectural or hypothetical" injury that cannot establish standing. *Lujan*, 504 U.S. at 560. Summary judgment for Bird-X on the noninfringement of trade dress claim is granted as well.

## C. Milo's Tortious Interference Claim[7]

Milo's tortious interference with business relationships claim requires it to prove: "(1) the existence of a valid business relationship (not necessarily evidenced by an enforceable contract) or expectancy; (2) the knowledge of the relationship or expectancy on the part of the interferer; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted." *360*

---

[7]    The parties assume that Illinois law applies to the common law claims, and so too will the Court.

*Painting, LLC v. R Sterling Enters., Inc.*, No. 20-CV-4919, 2021 WL 3603626, at \*5 (N.D. Ill. Aug. 13, 2021) (quoting *Am. Guardian Warranty Servs., Inc. v. Auto. Prot. Corp., Inc.*, No. 16 CV 11407, 2019 WL 6130813, at \*3 (N.D. Ill. Nov. 19, 2019)).

As a defense to such a claim, Illinois law "recognize[s] a privilege in [certain tort] cases where the defendant was acting to protect an interest which the law deems to be of equal or greater value than the plaintiff's . . . rights." *KMK Grp. LLC v. Helco Corp.*, No. 18 C 6361, 2021 WL 4499496, at \*1 (N.D. Ill. Aug. 18, 2021). Accordingly, a party's statement to a third party cannot be the basis for a tortious interference claim if they made that statement in a good faith effort to protect another legal interest, like a trademark interest.

Milo argues Bird-X tortiously interfered with its business relationships with Amazon and Home Depot by notifying them of Milo's alleged infringement of Bird-X's intellectual property rights. In response, Bird-X contends that those communications were privileged because they were a good faith attempt to protect the SCARE-EYE trademark. Milo has not responded to this argument in any way and, accordingly, has waived it. *Bonte*, 624 F.3d at 466. On this basis alone, Bird-X has established that they are entitled to summary judgment as to Milo's tortious interference with business relationships claim.

But even if the Court were to reach the merits of its argument, Milo has failed to produce any evidence that Bird-X was acting with the intent to interfere with Milo's business relationships, as opposed to with the intent of protecting its own financial interests. *See Dawson v. Gen. Motors Corp.*, 977 F.2d 369, 375 (7th Cir. 1992)

19

("Interference designed to protect one's financial interest is generally privileged."). Indeed, Bird-X has offered Seid's unrebutted testimony indicating that his communications with Milo's business partners were an effort to protect Bird-X's property rights. DSOF ¶ 51. Milo does not point to a single piece of evidence that might give rise to the opposite inference. Accordingly, Milo's tortious interference claim fails on the merits as well.

## D. Milo's DMCA Claim

The DMCA, 17 U.S.C. § 512, provides that "[a]ny person who knowingly materially misrepresents . . . that material or activity is infringing [a copyright], . . . shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer, . . . as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing." As relevant here, to prove a violation of this statute, a plaintiff must show that: (1) a defendant knew he was materially misrepresenting that an activity was infringing;[8] and (2) that the material misrepresentation caused the plaintiff's harm.

---

[8]     Although the Seventh Circuit has yet to interpret the requirements of § 512(f), the only other court in this district to consider the issue has held that liability under the DMCA requires actual knowledge that a misrepresentation is being made. *See Sunny Factory, LLC v. Chen*, No. 21 C 3648, 2022 WL 742429, at *4 (N.D. Ill. Mar. 11, 2022) ("It cannot be that Congress intended broad punitive authority to curtail inaccurate notifications of copyright infringement without proof of knowing and intentional misrepresentation."). Many courts outside of this circuit have considered the issue and held the same. *See, e.g., Ouellette v. Viacom Int'l, Inc.*, 671 F. App'x 972 (9th Cir. 2016) (holding that "some showing of actual knowledge" is necessary); *White v. UMG Recordings, Inc.*, No. 20 CIV. 9971 (AT), 2021 WL 6052106, at *2 (S.D.N.Y. Dec. 21, 2021) (cleaned up) (collecting cases) ("[C]ourts in this Circuit require plaintiffs to show "actual knowledge[.]" . . . [N]egligence is not the standard for liability under § 512(f)."); *see also Tuteur v. Crosley-Corcoran*, 961 F. Supp. 2d 333, 344 (D. Mass. 2013). This Court agrees that a knowing misrepresentation is required to show a

Milo insists that summary judgment on this claim is not warranted because "exhibits on record show that Bird-X knowingly misrepresented to Amazon.com that it had copyrights which were being infringed by Milo." Pl.'s Resp. Mem. at 22. But Milo does not point to any evidence that would support even a passing inference of a knowing representation by Bird-X. In fact, it is uncontroverted that the only reason the word "copyright" was mentioned in any of Bird-X's takedown notices was because Seid did not understand the difference between a copyright and a trademark. *See* DSOF ¶ 51. Accordingly, Bird-X is entitled to summary judgment as to Milo's DMCA claim.[9]

## E. Milo's Defamation Claim

Next is Milo's defamation claim. "Under Illinois law, the elements of a defamation claim . . . are 'that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages.'" *Doctor's Data, Inc. v. Barrett*, 170 F. Supp. 3d 1087, 1102–03 (N.D. Ill. 2016) (citations omitted).[10] No

---

violation of the DMCA.

[9]     For the sake of completeness, the Court notes that Milo's DMCA claims must be dismissed with respect to Bird-X's statements to Home Depot. Milo has not shown any injury with respect to those statements. It is undisputed that Milo had no interruption in its sales with Home Depot, even after Bird-X contacted Home Depot alleging trademark infringement. Seid Decl. Ex. M, 126-2. In response to Bird-X's email claiming that their intellectual property was being infringed by Milo, the Home Depot representative stated plainly: "We will not be removing any [of Milo's] items at this time." *Id.* And Milo makes no effort to respond to this point or to offer evidence of injury. Accordingly, Milo has no standing to bring its DMCA claims as to Bird-X's communications with Home Depot, and this Court may not rule on that claim. *See Lujan*, 504 U.S. at 560.

[10]     In this case, damages would be presumed, because the allegedly defamatory statements described the commission of a crime. *See Doctor's Data*, 170 F. Supp. 3d at 1103

statements are actionable, however, that are "reasonably capable of an innocent construction." *Tuite v. Corbitt*, 866 N.E.2d 114, 121 (Ill. 2006). As relevant here, "[a] statement that may innocently or reasonably be construed as referring to a person other than the plaintiff cannot be actionable." *Madison v. Frazier*, 539 F.3d 646, 654 (7th Cir. 2008). Whether a statement is reasonably capable of innocent construction is a question of law. *Id*. Moreover, true statements cannot support a defamation claim—and a statement need only be "substantially true" to avoid liability. *NPF Racing Stables, LLC v. Aguirre*, No. 18 C 6216, 2021 WL 1379494, at *7 (N.D. Ill. Apr. 12, 2021) (citing *Seitz-Partridge v. Loyola Univ. of Chi.*, 987 N.E.2d 34, 41 (Ill. App. Ct. 2013)).

There are three statements that could give rise to a defamation claim against Bird-X.[11] The Court considers each in turn.

First, in his January 6, 2018 email to a Milo employee, Seid stated that "[t]he Chinese government is looking for Anthony and Michael Liu for tax evasion." DSOF ¶ 70. This claim fails at the first step because Milo cannot prove that Bird-X "made a false statement about the plaintiff."—that is, about Milo. *Doctor's Data*, 170 F. Supp. 3d at 1102–03. The allegation that the Chinese government intends to

---

n.16 (N.D. Ill. 2016); DSOF ¶¶ 67–73.

[11] Although Milo insists that there could be a "multitude of other false accusations and defamatory statements to third parties," they fail to list even one beyond the three proposed by Bird-X. Pl.'s Resp. Mem. at 23. Indeed, the only piece of evidence they point to is a search of the copyright office database. *See* Hung Decl., Ex. A, ECF No. 119-2. To that end, the Court analyzes only the three statements addressed by Bird-X.

prosecute Michael and Anthony Liu is a statement about the Lius, not their company. Summary judgment on this defamation claim is granted.[12]

Milo encounters the same problem with Seid's statement to Home Depot representatives in the November 1, 2017 email. In that email, Seid said "[w]e know they are Chinese (based in Canada now) because they used to run one of our factories in China before disappearing to avoid Chinese government prosecution for failing to pay taxes." DSOF ¶ 71. Bird-X argues that this statement is clearly about the Lius and not about Milo as a company. Milo responds that "they" could as easily refer to the company as to the Lius. *See* Pl.'s Resp. Mem. at 24. But where a statement can just as easily be innocent as defamatory, the innocent construction rule requires the Court to give the statement its non-defamatory meaning. *See Madison*, 539 F.3d at 654. Thus, this second statement cannot give rise to a claim for defamation, and summary judgment for Bird-X is appropriate as to this statement.[13]

Third, Milo brings a claim of defamation over another statement made by Seid on November 1, 2017 to Home Depot representatives. Seid stated in his email "they

---

[12]     Milo has not, in any of its pleadings or responses, explicitly pointed to evidence showing that this allegation is false. That alone calls into question Milo's ability to bring a successful defamation claim. *See Glob. Relief Found., Inc. v. New York Times Co.*, 390 F.3d 973, 982 (7th Cir. 2004) (clarifying that the First Amendment requires that the Milo bear the burden of proving that a statement is false for the purposes of a defamation claim). The Court presumes the statement is false for the sake of a complete analysis.

[13]     However, even if these were not reasonable readings of Bird-X's first two statements, the defamation claims still would fail. Bird-X has raised the affirmative defense that these statements were all "substantially true," pointing to evidence that Michael Liu was prosecuted in 2007—but for fraud rather than tax evasion, and by the Taiwanese government, rather than the Chinese government. DSOF ¶ 67. Milo has failed to respond to this argument at all and, accordingly, has waived it. *Bonte*, 624 F.3d at 466. Thus, summary judgment is proper for Bird-X on these grounds as well.

have literally just copied our items and now offer them on HomeDepot.com . . . BELOW are 6 products that infringe on Bird-X products and are direct knockoffs." Just as with the second statement, the innocent construction rule requires the Court to read this statement as referring to the Lius rather than to the plaintiff, Milo. Accordingly, summary judgment is warranted as to this statement as well.

## F. Unfair Competition

Finally, "[t]o prevail on [an unfair competition claim under 15 U.S.C. § 1125], a plaintiff must be able to show (1) that its mark is protectable, and (2) that the defendant's use of that mark is likely to cause confusion among consumers." *Phoenix Ent. Partners v. Rumsey*, 829 F.3d 817, 822 (7th Cir. 2016).

Milo has not offered any evidence that Bird-X is appropriating its intellectual property as described in *Phoenix*. Rather, Milo's claim seems to be that Bird-X's cease and desist letters were misleading and harmed Milo's business. *See* SAC ¶ 85. But Milo points to no case suggesting that this is sufficient to state a claim of unfair competition under the Lanham Act, which requires ownership of a protectable trademark and proof of likelihood of confusion among consumers. *See Phoenix*, 829 F.3d at 822.

And indeed, even if this theory did present a plausible case for federal unfair competition, Milo fails to respond to any of Bird-X's legal or factual arguments, including Bird-X's argument that the cease-and-desist letters were sent in good faith, and "unfair competition claims [cannot be] based on good faith efforts to enforce intellectual property rights." *Heinz v. Frank Lloyd Wright Found.*, 762 F. Supp. 804,

24

806–07 (N.D. Ill. 1991). As the party that will bear the burden of proof on unfair competition at trial, Milo's failure to respond to these legal or factual contentions means they have not met their burden on summary judgment. *See LaRiviere*, 926 F.3d at 359. Thus, summary judgment for Bird-X must be granted as to this claim as well.

## IV.    Conclusion

For the reasons stated above, Milo's motion for partial summary judgment is denied. Bird-X's motion for summary judgment is denied with respect to its claim for trademark infringement and Milo's claim of non-infringement. In all other respects, Bird-X's motion for summary judgment is granted.

**IT IS SO ORDERED.**                    ENTERED: 3/24/22

_____
**John Z. Lee
United States District Judge**